US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS DEC 3 0 2025
FAYETTEVILLE DIVISION

Ronald E. Dowling
By_____
Deputy Clerk

| | |
|---|---|
| NATHANIEL TATHA-NAHANDJI, ) | |
| d/b/a WCWA WRESTLING, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | Case No. 5:25-cv-05276-TLB |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| WORLD WRESTLING ENTERTAINMENT, LLC; ) | |
| TKO GROUP HOLDINGS, INC.; ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC.; ) | |
| 2K GAMES, INC.; ) | |
| 2KSPORTS, INC.; ) | |
| VISUAL CONCEPTS ENTERTAINMENT, INC., ) | |
| ) | |
|    Defendants. ) | |

**COMPLAINT**

Plaintiff Nathaniel Tatha-Nahandji, doing business as WCWA Wrestling ("Plaintiff" or

"WCWA"), for his Complaint against Defendants World Wrestling Entertainment, LLC

("WWE"), TKO Group Holdings, Inc. ("TKO"), Take-Two Interactive Software, Inc.

("Take-Two"), 2K Games, Inc. ("2KGames"), and 2KSports ("2KSports"), Inc., and Visual

Concepts Entertainment, Inc. ("Visual Concepts") (collectively, "Defendants"), alleges as

follows:

**PARTIES**

1. Plaintiff Nathaniel Tatha-Nahandji is a natural person who currently resides in Atlanta,

Georgia, and at all relevant times has conducted business in the State of Arkansas under the name

1

WCWA Wrestling, including producing, staging, and publishing the works at issue from and into this District.

2. Plaintiff conceived, directed, produced, and published the audiovisual works at issue in this case and is the owner of the copyrights identified below.

3. Defendant World Wrestling Entertainment, LLC ("WWE") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 707 Washington Boulevard, Stamford, Connecticut 06901.

4. WWE produces, distributes, licenses, and monetizes professional wrestling programming, live events, and related audiovisual media nationwide, including through broadcasts, streaming platforms, live events, and licensed products distributed and sold within the State of Arkansas and this District.

5. Defendant TKO Group Holdings, Inc. ("TKO") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 200 Fifth Avenue, New York, New York 10110.

6. TKO is the parent company of World Wrestling Entertainment, LLC and exercises control over WWE's corporate governance, intellectual property strategy, licensing, branding, and commercial exploitation of WWE programming and related media.

7. Defendant Take-Two Interactive Software, Inc. ("Take-Two") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 110 West 44th Street, New York, New York 10036.

8. Take-Two is the parent company of 2K Games, Inc., 2KSports, Inc., and Visual Concepts Entertainment, Inc., and oversees, authorizes, and financially benefits from the licensing, development, publication, distribution, and marketing of the WWE 2K video game franchise.

9. Defendant 2K Games, Inc. ("2KGames") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 9 Hamilton Landing, Novato, California 94949.

10. 2K Games is a publishing entity within the Take-Two Interactive Software corporate structure and is responsible for the publication, marketing, distribution, and commercial exploitation of WWE-branded interactive video games, including WWE 2K23, WWE 2K24, and WWE 2K25, which are sold and distributed nationwide, including within the State of Arkansas and this District.

11. Defendant 2KSports, Inc. ("2KSports") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 622 Broadway, New York, New York 10012.

12. 2KSports is a publishing and branding entity within the Take-Two Interactive Software corporate structure and participates in the licensing, branding, marketing, and commercial exploitation of WWE-branded interactive video games, including the WWE 2K series, which are distributed and sold nationwide, including within the State of Arkansas and this District.

3

13. Defendant Visual Concepts Entertainment, Inc. ("Visual Concepts") is a corporation organized under the laws of the State of California, with its principal place of business at 10 Hamilton Landing, Novato, California 94949.

14. Visual Concepts is the video game development studio responsible for designing, animating, coding, and fixing the audiovisual content of the WWE 2K video games, including entrances, victory scenes, and other pre-scripted animations, gestures, and synchronized group configurations, including the Tier 1 Audiovisual Sequence at issue in this case.

15. Each Defendant, directly and/or through agents, subsidiaries, licensees, and affiliates, has committed, authorized, directed, or materially contributed to the acts complained of herein and has derived financial benefit from those acts.

**JURISDICTION AND VENUE**

16. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq., and the Lanham Act, 15 U.S.C. § 1125(a).

17. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b).

18. This Court has supplemental jurisdiction over Plaintiff's related state-law claims for unfair competition and unjust enrichment under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

19. This Court has personal jurisdiction over each Defendant because, on information and belief, each Defendant has purposefully availed itself of the privilege of conducting business in Arkansas by directing, distributing, and exploiting its products and services within this State and

4

this District. Defendants have broadcast and streamed professional wrestling programming into Arkansas through national television networks and digital platforms; promoted and conducted live events and merchandise sales directed to Arkansas consumers; and distributed, marketed, and sold WWE-branded video games, including the WWE 2K series, to Arkansas residents through physical retail channels and digital storefronts. Plaintiff's claims arise directly from these forum-directed activities, which caused injury to Plaintiff within this District.

20. Venue is proper in the Western District of Arkansas, Fayetteville Division, under 28 U.S.C. § 1391(b)(2), and, as to Plaintiff's copyright claims, under 28 U.S.C. § 1400(a), because a substantial part of the events giving rise to the claims occurred in this District, including the exploitation of infringing content directed to consumers located here.

## FACTUAL ALLEGATIONS

### A. THE PROTECTED WORK

21. Plaintiff operates WCWA Wrestling, an independent professional wrestling promotion.

22. Plaintiff is responsible for the creative direction, booking, staging, filming, and editing of WCWA's events and audiovisual content.

23. Beginning in or about August 2019, Plaintiff developed a distinctive, repeatable audiovisual sequence (the "Tier 1 Audiovisual Sequence" or the "Tier 1 Sequence") for WCWA's top faction, known as "Tier 1".

5

24. The Tier 1 Audiovisual Sequence is a deliberately composed, multi-beat audiovisual configuration that Plaintiff designed to function as a recurring identity ritual and visual "punctuation mark" within WCWA programming.

25. In its typical form, the Tier 1 Audiovisual Sequence unfolds as a deliberate, multi-phase audiovisual progression, repeated consistently across entrances, in-ring promos and other staged promotional segments, post-match moments, and post-beatdown scenes, and includes the following coordinated elements:

> a. The entrance, in-ring, or ringside action comes to a deliberate halt, and the Tier 1 members converge into a purposeful, hierarchical formation oriented toward the hard camera or primary broadcast camera, with the formation staged for frontal capture in a locked-off or minimally moving wide or mid-wide shot, ensuring all performers remain fully visible within the frame.

> b. The group enters a brief but intentional pause, holding position while the camera framing remains fixed and centered, allowing audience attention to settle on the assembled faction and establishing the formation as a posed visual configuration rather than incidental movement.

> c. A designated leader or cueing performer initiates the sequence by raising one arm upward as a visual cue, typically captured in a low-angle medium or medium-close framing that visually elevates the cueing performer within the composition while maintaining contextual visibility of supporting members.

> d. Other members follow in staggered but coordinated succession, each raising one arm with a single finger extended, as the camera holds its position or slightly

6

widens to preserve group coherence, allowing the synchronized gesture to complete fully within frame and emphasizing collective participation rather than individual motion.

e. In post-beatdown or domination contexts, the camera remains deliberately positioned, most commonly in a locked-off or minimally adjusted wide or mid-wide frontal angle from ringside or hard-camera orientation, to include the subdued opponent within the same frame as the assembled Tier 1 members. The opponent is visually subordinated within the composition, while the faction occupies the dominant, upright portion of the frame, ensuring that hierarchy, submission, and control are conveyed through spatial and camera-based composition rather than motion. (see Exhibit 1)

f. The sequence culminates in a sustained, static, camera-facing tableau, commonly framed symmetrically and held for a perceptible duration without camera movement, functioning as a recurring visual punctuation mark that conveys hierarchy, loyalty, submission, and collective authority, among related expressions of unified control, before the sequence is released and the scene transitions.

26. Plaintiff does not claim ownership of any single gesture, pose, or generic wrestling trope in isolation. Rather, Plaintiff's claims are directed to the specific, original Tier 1 Audiovisual Sequence conceived by Plaintiff and exemplified in Plaintiff's copyrighted audiovisual works and their materially consistent iterations defined by the unique selection, arrangement, timing, cinematographic framing, and narrative deployment of its constituent elements as a unified expressive whole.

7

27. Beginning in or about August 2019, Plaintiff used the Tier 1 Audiovisual Sequence consistently across multiple contexts, including entrances, in-ring promos, post-match celebrations, and post-beatdown scenes, with such use continuing during WCWA events and archival, promotional, and online distributions thereafter.

28. The Tier 1 Sequence's narrative function is consistent and deliberate, operating as a recurring, visual signal that punctuates WCWA programming and conveys unified group identity and control within the storyline.

29. Through repeated, consistent use, the Tier 1 Sequence became a recognizable identity marker for Tier 1 and for WCWA's programming, serving both as protectable expressive content and as a source-identifying trade dress.

30. While WCWA's live operations have experienced episodic periods of restructuring consistent with independent wrestling promotions, Plaintiff has at no time abandoned the Tier 1 Audiovisual Sequence or the associated copyright and trade dress rights. Plaintiff continues to derive goodwill from the ongoing digital dissemination of WCWA content featuring the Tier 1 Sequence and maintains a bona fide intent to continue and expand its use in future WCWA productions.

**B. OWNERSHIP AND REGISTRATION**

31. Plaintiff fixed the Tier 1 Audiovisual Sequence in multiple audiovisual works that he produced and published.

32. Among other works, the Sequence is fixed in:

8

a. A WCWA Wrestling event and match titled "Monsters and Men : Xander Gold vs Brian Cage Oct '19," first published on or about December 3, 2019, for which Plaintiff obtained U.S. Copyright Registration No. PA 2-551-848 (the "Monsters and Men Work") (see Exhibit 3).

b. A WCWA Wrestling event and match titled "WCWA Rematch : Purge 1 Double D vs Dusty Gold," first published on or about December 6, 2020, for which Plaintiff obtained U.S. Copyright Registration No. PA 2-551-849 (the "Purge Work") (see Exhibit 2).

33. The Monsters and Men Work and the Purge Work (together, the "WCWA Works") are original audiovisual works that Plaintiff authored and owns.

34. Beginning in or about August 2019, Plaintiff publicly published the WCWA Works and other WCWA content featuring the Tier 1 Audiovisual Sequence through live ticketed events and through online dissemination on platforms such as Facebook and YouTube. These works were disseminated through multiple public channels and remained publicly accessible during the period relevant to this action, making the Tier 1 Audiovisual Sequence observable to wrestling fans and industry participants beyond WCWA's immediate geographic market and contributing to its recognition as a recurring, public-facing element of WCWA's programming and brand identity.

35. Plaintiff's copyright registrations for the WCWA Works were issued by the U.S. Copyright Office on or about September 23, 2025.

36. The registration for the Purge Work was made within five years of first publication and constitutes prima facie evidence of validity and ownership under 17 U.S.C. § 410(c). The

registration for the Monsters and Men Work constitutes probative evidence of ownership and validity, with the evidentiary weight to be accorded the certificate within the discretion of the Court.

37. The Tier 1 Audiovisual Sequence, as fixed and embodied in the WCWA Works, embodies original expression in the selection, coordination, and arrangement of otherwise common elements including group alignment, hard-camera orientation, timing pause, lead cue, synchronized finger raise, and a static tableau used as a narrative punctuation mark.

## C. ACCESS

38. In 2019, an independent professional wrestler who performed in WCWA programming subsequently appeared on WWE's SmackDown program shortly thereafter.

39. On or about August 2019, that individual requested WCWA footage for review by WWE scouting personnel.

40. Plaintiff oversaw the preparation of the requested footage and transmitted it to the independent professional wrestler for delivery to WWE personnel.

41. Within weeks thereafter, the Tier 1 Audiovisual Sequence was first performed and publicly published in WCWA programming.

42. The request placed WCWA's audiovisual works and creative output within WWE's talent-evaluation and review pipeline, creating a direct channel through which WCWA content was reviewed and monitored during the period when the Tier 1 Audiovisual Sequence was later developed and publicly disseminated.

43. Separately, in or around March 2019, a WWE employee attended a WCWA live event, maintained contact with Plaintiff, and, on information and belief, continued to monitor WCWA content from 2019 through 2021, during the period when the Tier 1 Audiovisual Sequence was repeatedly used and disseminated online.

44. Through these direct and indirect channels, including internal scouting review and publicly accessible WCWA content on platforms such as Facebook and YouTube, WWE and its affiliates had a reasonable opportunity to view, study, and copy the Tier 1 Audiovisual Sequence prior to and during Defendants' development and exploitation of substantially similar audiovisual content.

**D. THE INFRINGEMENT**

45. On information and belief, beginning in or around September 2021, after Plaintiff had created and publicly used the Tier 1 Audiovisual Sequence, WWE introduced a visually and narratively similar ritualized audiovisual sequence for its "Bloodline" faction (the "Bloodline Sequence").

46. As deployed in WWE programming, the Bloodline Sequence consists of a coordinated audiovisual progression that includes, in combination:

> a. Bloodline members aligning together in a deliberate, hierarchical formation oriented toward the primary broadcast camera;
>
> b. A brief, intentional timing pause during which the formation is held;
>
> c. A lead cue initiated by a designated member, followed by staggered but synchronized arm raises by the remaining members, each extending a single finger upward; and

d. A sustained, static, camera-facing tableau functioning as the climactic moment of acknowledgment within the segment.

47. WWE utilizes the Bloodline Sequence repeatedly across multiple presentation contexts, including entrances, in-ring promotional segments, post-match moments, and post-beatdown scenes.

48. Within WWE's narrative framework, the Bloodline Sequence operates as a ritualized mechanism for asserting and confirming factional authority and internal hierarchy, serving a narrative function comparable to that performed by WCWA's Tier 1 Audiovisual Sequence.

49. In entrance contexts, both WCWA's Tier 1 entrance sequence and WWE's Bloodline entrance exhibit a shared multi-phase structure, including:

a. A group establishing shot presenting the faction as a unified unit;

b. A leader-focused shot emphasizing hierarchical centrality; and

c. A unified group tableau featuring a synchronized upward gesture with a single finger extended, held as the entrance climax.

50. In both sequences, the faction leader is positioned slightly forward of the group and framed to emphasize prominence, while supporting members arrange themselves in a structured formation behind the leader.

51. In each sequence, the unified single-finger gesture occurs only after the group has reached a stationary pose, and the camera remains locked on the tableau for a sustained duration sufficient to function as the narrative payoff of the segment.

52. In post-beatdown or domination contexts, both WCWA's Tier 1 Audiovisual Sequence and WWE's Bloodline Sequence follow a comparable multi-beat progression, including:

> a. Framing the faction in relation to a single subdued opponent;
>
> b Visual reduction of the opponent through positioning, posture, or placement within the frame;
>
> c. Faction re-formation into a deliberate, camera-facing arrangement; and
>
> d. Completion of a unified identity tableau featuring the synchronized index finger point, framed specifically to keep the subdued opponent visible within the lower third of the frame, creating a unique visual signature of dominance.

53. Across these contexts, both sequences employ consistent cinematographic choices, including ringside or eye-level camera placement, wide symmetrical framing, and a sustained static hold, presenting the faction as a staged, unified portrait asserting collective authority (see Exhibit 1).

54. The temporal architecture of the two sequences is also substantially similar. Each follows a defined progression consisting of formation, timing pause, lead cue, staggered synchronization, and sustained static hold, unfolding with rhythmic consistency that distinguishes the sequences from spontaneous or unchoreographed group poses.

55. In WCWA's Tier 1 presentation, the unified group pose was frequently accompanied by a contemporaneous audible command delivered at the moment the synchronized finger-raise was completed. The verbal cue and the visual tableau functioned together to demand acknowledgment of authority, demonstrating that the sequence was designed as an enforcement mechanism within the narrative rather than as a celebratory gesture. WWE's Bloodline

13

presentation employs a comparable structure, pairing a verbal command of acknowledgment with the same unified finger-raise pose to compel recognition of hierarchical authority. In both instances, the similarity lies not in the specific words spoken, but in the repeated use of a coordinated audiovisual sequence as the mechanism by which authority is asserted and affirmed.

56. Through these shared structural, temporal, cinematographic, and narrative elements, the Bloodline Sequence converges with the Tier 1 Audiovisual Sequence in its selection, coordination, and arrangement of formation, timing, camera framing, synchronized stillness, and narrative deployment, extending beyond a generic group pose or isolated gesture.

## E. VIDEO GAMES

57. WWE has licensed the Bloodline Sequence and related audiovisual content to Take-Two, 2KGames, 2KSports, and Visual Concepts for inclusion in WWE-branded video games, including WWE 2K23, WWE 2K24, and WWE 2K25 (collectively, the "WWE 2K Games").

58. The WWE 2K Games include pre-scripted, non-interactive digital animations, including entrance cutscenes and post-match victory sequences, that substantially reproduce the specific choreography, hierarchical formation, synchronized timing, and staged tableau of the Tier 1 Audiovisual Sequence. These digital assets closely replicate the expressive selection, coordination, and arrangement originally authored by Plaintiff and fixed in Plaintiff's copyrighted works.

59. These animations are marketed as key features of the Bloodline brand within the WWE 2K Games and are used to promote the games in trailers, screenshots, and other advertising.

14

60. By digitizing the Tier 1 Audiovisual Sequence into the WWE 2K Games, Defendants have created unauthorized derivative works that translate Plaintiff's original audiovisual sequencing, staging, and narrative presentation into a virtual environment. This cross-platform exploitation repurposes Plaintiff's expressive selection, coordination, and arrangement as a recurring feature of Defendants' software products and as a source of commercial appeal independent of Plaintiff's authorization.

61. The WWE 2K Games are distributed on a global scale through physical media and digital storefronts, resulting in repeated and ongoing reproductions, public displays, and performances of the infringing audiovisual sequences in connection with Defendants' commercial software products. This widespread distribution amplifies the unauthorized exploitation of Plaintiff's expressive work, expands the scope of Defendants' unjust enrichment, and exacerbates the harm to Plaintiff's ability to control the use and value of the Tier 1 Audiovisual Sequence.

**F. NOTICE**

62. Plaintiff first became aware of the similarity between WCWA's Tier 1 Audiovisual Sequence and WWE's Bloodline Sequence on or about January 24, 2024, following review and comparison of WCWA's previously published audiovisual content and WWE programming.

63. On or about October 23, 2025, Plaintiff provided Defendants with formal written notice (the "Demand Letter") asserting WCWA's longstanding common law trademark and trade dress rights in the Tier 1 Sequence (referred to in the letter as the "WCWA Gesture"). The Demand Letter informed Defendants that the Sequence constituted a valuable branding asset

dating back to at least 2019 and that Defendants' use of the Bloodline Sequence misappropriated Plaintiff's goodwill associated with that branding.

64. Despite receiving notice of Plaintiff's claims, Defendants have continued to broadcast, stream, market, distribute, and sell programming and video games incorporating the Bloodline Sequence and its fixed digital reproductions.

65. Defendants' continued exploitation of the Bloodline Sequence after receipt of Plaintiff's Demand Letter has been willful and in reckless disregard of Plaintiff's rights.

## CLAIMS FOR RELIEF

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT

17 U.S.C. §§ 106, 501

(Against All Defendants)

66. Plaintiff realleges and incorporates by reference paragraphs 1 through 65 as if fully set forth herein

67. Plaintiff is the author and owner of original audiovisual works, including the *Monsters and Men* Work (U.S. Copyright Registration No. PA 2-551-848) and the *Purge* Work (U.S. Copyright Registration No. PA 2-551-849) (collectively, the "WCWA Works").

68. The WCWA Works fix and embody Plaintiff's original Tier 1 Audiovisual Sequence, which constitutes protectable expression under the Copyright Act.

69. The Tier 1 Audiovisual Sequence embodies original expression through the specific selection, coordination, and arrangement of audiovisual elements, including structured group formation, deliberate timing pauses, cue-based synchronization, camera-facing hierarchical staging, and a sustained static tableau deployed as a recurring narrative punctuation.

70. Defendants had access to the WCWA Works and the Tier 1 Audiovisual Sequence through direct industry contact, talent evaluation channels, and the widespread public availability of WCWA audiovisual content on online platforms.

71. Defendants copied protectable elements of the Tier 1 Audiovisual Sequence, as demonstrated by the substantial similarity between the Tier 1 Audiovisual Sequence and the Bloodline Sequence and its fixed reproductions.

72. After filtering out unprotectable ideas, scènes à faire, and generic wrestling tropes, the expressive core of the Tier 1 Audiovisual Sequence includes, among other elements:

a. A repeatable, multi-beat progression culminating in a unified identity tableau;

b. Defined temporal sequencing governing formation, pause, cue, synchronization, and hold;

c. Hierarchical, camera-oriented staging emphasizing a central leader; and

d. Deployment of the sequence as a ritualized narrative full stop confirming authority.

73. The Bloodline Sequence, as used in WWE programming and fixed within the WWE 2K Games, reproduces this expressive structure and overall total concept and feel.

74. By creating, broadcasting, streaming, and exploiting the Bloodline Sequence in televised programming, live events, and digital media, Defendants WWE and TKO infringed Plaintiff's exclusive rights of reproduction, public performance, and public display under 17 U.S.C. § 106.

75. By creating, fixing, distributing, and selling the WWE 2K Games incorporating the Bloodline Sequence, Defendants Take-Two, 2KGames, 2KSports, and Visual Concepts infringed Plaintiff's exclusive rights of reproduction, distribution, public performance, public display, and preparation of derivative works under 17 U.S.C. § 106.

76. Defendants' acts of infringement have caused and continue to cause Plaintiff substantial harm, including foreclosed or impaired licensing opportunities, diminished market value, and other economic and non-economic damages.

77. Plaintiff is entitled to recover actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).

78. Plaintiff is further entitled to injunctive relief pursuant to 17 U.S.C. § 502 to prevent Defendants' continued infringement.

79. For any acts of infringement that commenced after the effective date of Plaintiff's copyright registrations, Plaintiff seeks statutory damages pursuant to 17 U.S.C. § 504(c), and such attorney's fees and costs as may be permitted by law and awarded in the Court's discretion pursuant to 17 U.S.C. § 505.

## COUNT II

## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

17 U.S.C. §§ 106, 501

(Against All Defendants)

80. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 79 as if fully set forth herein.

A. Contributory Infringement

81. Defendants knew, should have known, or were willfully blind to the fact that their exploitation of the Bloodline Sequence infringed Plaintiff's copyrights. This knowledge is evidenced by Plaintiff's written notice in October 2025 and, prior to that notice, by Defendants' access to and reasonable opportunity to view Plaintiff's widely disseminated WCWA Works through publicly available wrestling content and industry talent-evaluation channels.

82. WWE and TKO materially contributed to the infringement by creating, approving, embedding, and continuing to distribute the Bloodline Sequence in WWE programming, by licensing that content to third parties, and by promoting and monetizing programming containing infringing audiovisual material.

83. Take-Two, 2KGames, 2KSports, and Visual Concepts materially contributed to the infringement by designing, animating, coding, embedding, distributing, and marketing the Bloodline Sequence within the WWE 2K Games, including as a signature identity feature of the Bloodline faction used to enhance the games' commercial appeal.

84. By knowingly inducing, causing, and materially contributing to the direct infringement of Plaintiff's copyrights by others, including broadcasters, streaming platforms,

retailers, and end users, who trigger and perform the infringing sequences during gameplay, Defendants are liable for contributory copyright infringement.

B. Vicarious Infringement

85. WWE and TKO had and continue to have the right and ability to supervise and control the creation, approval, editing, removal, broadcast, and distribution of WWE programming containing the Bloodline Sequence, including through their control over linear broadcasts and proprietary streaming platforms, and derive direct financial benefits from the increased commercial appeal and brand equity generated by the Bloodline Sequence as a signature faction identifier.

86. Take-Two, 2KGames, 2KSports, and Visual Concepts had and continue to have the right and ability to supervise and control the content of the WWE 2K Games, including the inclusion, modification, disabling, or removal of specific animations and audiovisual sequences through development decisions, updates, patches, and post-release support, and derive direct financial benefits from sales, licensing, and consumer engagement driven in part by the inclusion of the Bloodline Sequence.

87. Despite having the right and ability to prevent, limit, modify, or remove the infringing uses of the Tier 1 Audiovisual Sequence, Defendants failed to do so and instead continued to exploit and profit from the infringing conduct.

88. By reaping direct financial benefits from infringing activity while having the right and ability to supervise and control that activity, Defendants are liable for vicarious copyright infringement.

20

89. Defendants' contributory and vicarious infringement has been and continues to be willful, particularly following Defendants' receipt of Plaintiff's written notice, and Plaintiff has suffered damages as a result of these acts and is entitled to the same remedies described in Count I, including actual damages, Defendants' profits, and injunctive relief.

## COUNT III

## TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A)

(Against All Defendants)

90. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 89 as if fully set forth herein.

91. Plaintiff offers professional wrestling entertainment services, including live events and distributed audiovisual programming, under the WCWA Wrestling brand.

92. Plaintiff's trade dress consists of a distinctive, recurring audiovisual configuration used in connection with those services, commonly referred to as the Tier 1 Audiovisual Sequence, which functions as a source-identifying indicator for WCWA's Tier 1 faction and WCWA programming (the "Tier 1 Trade Dress").

93. Plaintiff has used the Tier 1 Trade Dress consistently and prominently in connection with WCWA's entertainment services since at least August 2019, such that it identifies and distinguishes WCWA's programming from that of others.

94. The Tier 1 Trade Dress is nonfunctional. It is not essential to the performance of professional wrestling, does not affect the cost or quality of the services provided, and represents one of many available methods for portraying faction identity or unity.

95. Numerous alternative visual configurations and presentation styles are available to wrestling promotions to convey group affiliation or authority without adopting Plaintiff's specific audiovisual configuration.

96. Through continuous and repeated use across multiple live events, recorded matches, promotional clips, and online distributions, the Tier 1 Trade Dress has acquired distinctiveness and secondary meaning among WCWA's audience.

97. The Tier 1 Trade Dress has acquired distinctiveness among the relevant wrestling audience through repeated and consistent use, including audience imitation of the Sequence at live events and its replication in fan-created signage and visual media, demonstrating recognition of the configuration as associated with WCWA's Tier 1 faction.

98. The Tier 1 Trade Dress is consistently presented in a culminating, static tableau in which the faction holds a camera-facing, symmetrical formation for a perceptible duration. This held configuration is deliberately staged to be visually legible as a unified identity image and is routinely captured and disseminated in still frames, thumbnails, promotional images, and paused video moments across WCWA media. As a result, audiences encounter the Tier 1 Trade Dress not only as a moving sequence but also as a fixed, recognizable visual marker associated with WCWA's Tier 1 faction and WCWA's entertainment services, independent of any single gesture viewed in isolation.

22

99. Plaintiff began using the Tier 1 Trade Dress in commerce well before Defendants introduced a substantially similar audiovisual sequence for the Bloodline faction.

100. Defendants have used a confusingly similar audiovisual configuration in connection with their own professional wrestling entertainment services and related products, including televised programming, streaming content, live events, social-media clips, and WWE-branded video games.

101. The Bloodline audiovisual presentation closely mirrors the overall look and feel of the Tier 1 Trade Dress, including its overall appearance, structure, timing, and narrative deployment, such as the hierarchical formation, lead cue, synchronized gesture, and sustained camera-facing tableau.

102. Defendants' use of the Bloodline audiovisual presentation occurs in connection with identical or closely related entertainment services and products offered through overlapping channels of trade and directed to overlapping audiences.

103. Defendants' adoption and extensive promotion of a confusingly similar audiovisual configuration is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Plaintiff and Defendants, or as to the origin, sponsorship, or approval of Defendants' services and products.

104. Because Defendants possess substantially greater market power and visibility than Plaintiff, Defendants' conduct has created a likelihood of reverse confusion, causing consumers to mistakenly believe that Plaintiff's Tier 1 Trade Dress is derived from, affiliated with, or subordinate to Defendants' Bloodline presentation.

23

105. Defendants' use of the confusingly similar audiovisual configuration was undertaken without Plaintiff's authorization and has impaired Plaintiff's ability to control the commercial identity and goodwill associated with the Tier 1 Trade Dress.

106. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to goodwill, loss of control over brand identity, and monetary harm.

107. Defendants' actions constitute trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

108. Plaintiff is entitled to injunctive relief prohibiting Defendants' continued use of the infringing trade dress, as well as recovery of Defendants' profits, Plaintiff's damages, and the costs of this action pursuant to 15 U.S.C. § 1116(a) and § 1117(a).

## COUNT IV

### UNFAIR COMPETITION

Arkansas Common Law

(Against All Defendants)

109. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 108 as if fully set forth herein.

110. Defendants' unauthorized use of the Tier 1 Sequence in consumer-facing wrestling programming, promotional materials, and related media constitutes unfair competition, misappropriation, and passing off under Arkansas common law.

111. By adopting, using, and promoting a sequence and overall presentation that closely tracks Plaintiff's prior, distinctive Tier 1 Audiovisual Sequence and associated trade dress,

24

Defendants have misappropriated Plaintiff's commercial identity and goodwill and have passed off that identity as their own.

112. Defendants deploy the Bloodline presentation in consumer-facing broadcasts, streaming content, live events, social media clips, promotional materials, and video games directed to the same or substantially similar audiences as WCWA's wrestling content and entertainment services.

113. Defendants' conduct is likely to mislead or confuse consumers into believing that Plaintiff's Tier 1 presentation and WCWA programming are affiliated with, sponsored by, approved by, or derived from WWE, or that Plaintiff is imitating WWE, when in fact Plaintiff is the prior and independent creator.

114. Defendants' actions constitute unfair competition and passing off under Arkansas common law.

115. As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered and will continue to suffer loss of goodwill, reputational harm, diminished control over its commercial identity, and other damages in an amount to be proven at trial.

116. Plaintiff is entitled to injunctive relief and damages under Arkansas law to remedy Defendants' unfair competition.

## COUNT V

## UNJUST ENRICHMENT

Arkansas Common Law

(Against All Defendants)

25

117. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 116 as if fully set forth herein.

118. Defendants have received substantial commercial and reputational benefits through their unauthorized exploitation of the Tier 1 Audiovisual Sequence and the associated Tier 1 Trade Dress.

119. These benefits include, among other things:

a. Enhanced brand identity, visibility, and fan engagement associated with the Bloodline faction;

b. Increased value of televised programming, live events, streaming content, and merchandise featuring the Bloodline presentation;

c. Increased sales, downloads, and user engagement for the WWE 2K video game series incorporating the Bloodline Sequence; and

d. Avoidance of the time, expense, and creative effort required to independently develop a comparable audiovisual ritual and branding device.

120. Defendants obtained these benefits without any license, authorization, assignment, or other legal entitlement from Plaintiff.

121. Defendants' retention of the benefits derived from their appropriation of Plaintiff's creative work and trade dress, without compensation, is inequitable and contrary to principles of justice and good conscience.

122. The enrichment received by Defendants is directly and proximately linked to their use of the Bloodline Sequence as a recurring branding and identity device across broadcast programming, live events, promotional media, and video games.

26

123. Plaintiff is entitled to restitution under Arkansas unjust enrichment principles, measured by the value of the benefits unjustly obtained by Defendants as a result of their conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

A. On Counts I and II (Copyright Infringement)

124. A declaration that Defendants have infringed Plaintiff's copyrights in the WCWA Works.

125. A permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliates, licensees, successors, and assigns, and all persons in active concert or participation with them, from further infringing Plaintiff's copyrights, including by reproducing, distributing, publicly performing, publicly displaying, or preparing derivative works based upon the Tier 1 Audiovisual Sequence. This injunction specifically requires Defendants to:

> a. Cease the broadcast, streaming, distribution, or sale of audiovisual
> programming to the extent such programming contains infringing reproductions
> of the Tier 1 Audiovisual Sequence, unless and until such infringing content is
> removed or modified to eliminate infringement; and

> b. Disable, remove, or patch out all infringing digital assets and animations from
> video game software, including but not limited to WWE 2K23, WWE 2K24, and

27

WWE 2K25, across all digital storefronts, servers, and cloud-based platforms, so

that the infringing content is no longer accessible to, reproducible by, or

performable by end users in the ordinary course of use.

126. An award of Plaintiff's actual damages and Defendants' profits attributable to the infringement, in an amount to be proven at trial, pursuant to 17 U.S.C. § 504(b).

127. An order requiring Defendants to provide a full accounting of all revenues and profits derived from the infringing uses.

128. An order for the impoundment and destruction, or other reasonable disposition, of all infringing articles, including digital master files, marketing materials, and video-game code containing the infringing Sequence, pursuant to 17 U.S.C. § 503.

129. An award of Plaintiff's costs of suit and reasonable attorney's fees, to the extent permitted by law, including should Plaintiff retain counsel during the pendency of this action, pursuant to 17 U.S.C. § 505.

B. On Count III (Lanham Act Trade Dress Infringement and Unfair Competition)

130. A declaration that Defendants' use of the Bloodline Sequence and related audiovisual configurations infringes Plaintiff's Tier 1 Trade Dress and constitutes unfair competition under 15 U.S.C. § 1125(a).

131. A permanent injunction enjoining Defendants from using in commerce any trade dress or audiovisual configuration likely to cause confusion with the Tier 1 Trade Dress, including the Bloodline Sequence as presently used.

28

132. An award of Defendants' profits, Plaintiff's damages, and the costs of this action under 15 U.S.C. § 1117(a), including enhancement or trebling of damages as permitted by law for willful infringement.

133. An order requiring corrective advertising or other equitable measures to dispel confusion, if the Court deems such relief appropriate.

C. On Count IV (Arkansas Common-Law Unfair Competition)

134. A declaration that Defendants' conduct constitutes unfair competition under Arkansas law.

135. An injunction prohibiting Defendants from continuing the unfair competition proven at trial.

136. An award of damages in an amount to be proven at trial, together with pre-judgment and post-judgment interest as allowed by law.

D. On Count V (Arkansas Unjust Enrichment)

137. An order requiring restitution or disgorgement measured by the value of the benefits unjustly obtained by Defendants as a result of the conduct alleged, in an amount to be proven at trial.

E. On All Counts

138. An award of Plaintiff's costs of suit.

139. Pre-judgment and post-judgment interest at the maximum rate allowed by law.

140. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 30, 2025

Respectfully submitted,

/s/

Nathaniel Tatha-Nahandji

d/b/a WCWA Wrestling

11585 Jones Bridge RD

Suite 420-406

Johns Creek, GA 30022

Phone: 470-394-8301

Email: wcwalegal@gmail.com

*Plaintiff, Pro Se*

## APPENDIX A

### EXHIBIT INDEX

Exhibit 1……………………………………………………….Side-by-Side Comparison of Plaintiff's Tier 1 Audiovisual Sequence and Defendants' Bloodline Audiovisual Sequence (Post-Action Group Pose Phase) Related paragraphs 25, 52


Exhibit 2 ……………………………………………………. U.S. Copyright Office Registration Record "WCWA Rematch: Purge 1 Double D vs. Dusty Gold" (Reg. No. PA 2-551-849) Related paragraphs 32a


Exhibit 3……………………………………………………….U.S. Copyright Office Registration Record "Monsters and Men: Xander Gold vs. Brian Cage" (Reg. No. PA 2-551-848) Related paragraphs 32b