**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**NATHANIEL TATHA-NAHANDJI, d/b/a WCWA WRESTLING** — **PLAINTIFF**

**v.** **Case No. 5:25-CV-05276-DCF**

**WORLD WRESTLING ENTERTAINMENT LLC, *et al.*** — **DEFENDANTS**

# OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 22) and Brief in Support (Doc. 23), Plaintiff Tatha-Nahandji's Response in Opposition (Doc. 26), and Defendants' Reply (Doc. 42). For the reasons given below, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

This is a copyright action. The Plaintiff Nathaniel Tatha-Nahandji is a natural person who conducted business in the state of Arkansas under WCWA Wrestling. (Doc. 2 at 1-2). This matter arises from facts surrounding copyright infringement allegedly caused by the unlawful use of Plaintiff's audio-visual sequence (the "Tier 1 Audiovisual Sequence" or the "Tier 1 Sequence") in World Wrestling Entertainment, LLC ("WWE") live events and video games. (Doc. 2, Complaint). Defendants consist of the following parties: World Wrestling Entertainment, LLC ("WWE"); TKO Group Holdings, Inc. ("TKO");

Take-Two Interactive Software, Inc. (Take-Two"); 2K Games, Inc. ("2KGames"); 2KSports, Inc. ("2KSports"); and Visual Concepts Entertainment, Inc. ("Visual Concepts"). (*Id.* at 2-4).

According to the Plaintiff, the Tier 1 Sequence is comprised of specific coordinated elements, including hierarchical formation, designated pauses, cueing from a "lead" performer who initiates staggered arm raises by the supporting members with a single finger extended, and specific placement of subdued opponents, which are all shot via specific camera angles. (*Id.* at 6-7). Plaintiff asserts he developed the Tier 1 Sequence, for WCWA's top faction as a recurring identity ritual and visual "punctuation mark." (*Id.* at 6). Plaintiff contends that the designated formation, placement, cueing, and specific camera angles are intended to convey, among other things, hierarchy, loyalty, and collective authority. (*Id.* at 7).

According to the Complaint, the Tier 1 Sequence was first publicly available in WCWA programming on or about August 2019 and two copyright registration applications were filed for the "motion picture[s]" that contained the Tier 1 Sequence on September 19, 2025. (*Id.* at 6, 9; Doc. 2-2, p. 3; Doc. 2-3, p. 3). The copyright registrations for these works were issued by the U.S. Copyright Office on September 23, 2025. (Doc. 2, p. 9).

Plaintiff contends that WCWA programming was on the Defendants'

radar prior to the first publication of the Tier 1 Sequence and, through their continued monitoring of WCWA content from 2019 through 2021, Defendants had access to and viewed the Tier 1 Sequence. (*Id.* at 10-11). To establish ongoing monitoring, Plaintiff alleges that an independent wrestler who previously performed for WCWA delivered a tape, which Plaintiff prepared, to a WWE scout in August 2019. (*Id.* at 10). A few weeks after the delivery of the tape, the Tier 1 sequence was first performed in WCWA programming. (*Id.*).

In a separate interaction on or around March 2019, a WWE employee attended a WCWA live event, remained in contact with the Plaintiff, and, per the Complaint, continued to monitor WCWA content containing the Tier 1 Sequence from 2019 through 2021. (*Id.* at 11). Through these interactions, combined with public streaming platforms (Facebook and YouTube), Plaintiff asserts that "WWE had a reasonable opportunity to view, study, and copy" the Tier 1 Sequence. (*Id.*). Plaintiff alleges that Defendants committed copyright infringement by introducing a similar audiovisual sequence for its "Bloodline" wrestlers' faction in live performances and video games after the publication of the Tier 1 Sequence. (*Id.* at 1, 11).

This case was filed December 30, 2025, (Doc. 2) and reassigned to District Judge David Clay Fowlkes on February 19, 2026 (Doc. 17). On February 20, 2026, Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc.

22) and Brief in support of their Motion (Doc. 23). Plaintiff filed an Opposition to Defendants' Motion on March 27, 2026 (Doc. 35). The Court heard oral arguments in this matter on June 1, 2026 (Doc. 44). Following oral arguments, Plaintiff filed a Motion for an Extension of the Deadline to File an Amended Complaint on August 25 (Docs. 48-49), which this Court granted (Doc. 51). Plaintiff subsequently filed a Motion for Leave to File First Amended Complaint on August 28 (Doc. 50), which is currently pending. For the reasons below, that motion is now moot.

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of

truth.”). Instead, “[t]he complaint must allege facts, which, when taken as true, raise more than a speculative right to relief.” *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

## III. DISCUSSION

This case involves allegations of direct copyright infringement, contributory and vicarious copyright infringement, trade dress infringement and common law unfair competition and unjust enrichment. (Doc. 2, Complaint). The Court will address each in turn.

### 1. Direct Copyright Infringement

For the reasons outlined below, the Court finds that Plaintiff has failed to state a claim for direct copyright infringement. To succeed in a direct copyright infringement claim, the plaintiff must show 1) “ownership of a valid copyright” and 2) “copying of constituent elements of the work that are original.” *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Warner Bros. Ent., Inc. v. X One X Productions*, 644 F.3d 584, 595 (8th Cir. 2011); *Griner v. King*, 568 F.Supp.3d 978, 988 (N.D. Iowa 2021).

#### a. Ownership of a Valid Copyright

The Court finds ownership of a valid copyright. Prima facie evidence of valid copyright exists when the copyright registration was filed within five years of first publication. *Oliver v. Johanson*, 357 F.Supp.3d 758, 776 (W.D. Ark.

2018) (articulating that 17 U.S.C. § 410(c) creates a rebuttable presumption which shifts the burden to the defendant to prove invalidity); *see also Thimbleberries, Inc. v. C & F Enterprises, Inc.*, 142 F.Supp.2d 1132, 1137 (D. Minn. 2019) (noting that failure to file a copyright registration within five years does not eliminate validity but leaves it to the Court's discretion to determine what evidentiary weight the copyright certificate should be afforded). Copyright ownership will vest "initially in the author or authors of the work, unless the work is made for hire." *Vintage Verandah, Inc. Mastercraft Intern., Inc.*, No. 04CV00066, 2006 WL 3735975, at *2 (E.D. Ark. Dec. 15, 2006) (quoting 17 U.S.C. § 201(a)-(b) (internal marks omitted)). The term "author" refers to "the individual who creates the work by translating an idea into a fixed, tangible expression." *Vintage*, 2006 WL 3735975, at *2.

Plaintiff filed two copyright registration applications for the "motion picture[s]" that contained the Tier 1 Sequence on September 19, 2025, and the U.S. Copyright Office issued registrations for them on September 23, 2025. (Doc. 2, pp. 6, 9; Doc. 2-2, pp. 2, 3; Doc. 2-3, pp. 2, 3). The Defendants allege that the Plaintiff's posing sequence is not protectable and, as such, the copyright is invalid. (Doc. 23, p. 10). However, Defendants did not brief the issue of ownership in their Motion. (*Id.* at 23). Insofar as the Defendants wish to address this argument later, the Court has found this unsupported by the facts with

respect to PA 2-551-849 because the Plaintiff has established a rebuttable presumption to copyright protection since he filed within five years of first publication.

Defendants attempt to circumvent this presumption by arguing that the filtering process leaves no protectable elements. (Doc. 23, pp. 18-21). However, the Eighth Circuit has clearly stated that "it is improper to perform analytic dissection, or filtering, when conducting the intrinsic step of analysis." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 957, 966 (8th Cir. 2005) (referencing *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir.1997)).

The United States Copyright Office issued Plaintiff a certificate of registration for their WCWA Rematch: Purge 1 Double D vs. Dusty Gold video on September 23, 2025. (Doc. 2-2 at 3). Under copyright law, "[a] plaintiff's registration of [their] work within five years of the work's creation is prima facie evidence of the validity of the copyright and the plaintiff's ownership therein." *Reliant Care Mgmt., Co., Inc. v. Health Sys., Inc.*, No. 10CV37, 2011 WL 4342619, at *3 (E.D. Mo. Sep. 15, 2011). Further, "in a judicial proceeding, [a] certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* (quoting 17 U.S.C. § 410(c)).

According to the copyright certificate, this work was first published on December 6, 2020, and the registration was filed on September 19, 2025, which falls within the five-year window. (Doc. 2-2, pp. 2, 3). As Plaintiff outlined in his Complaint, the protected elements of his copyright include the full sequence of events, which is reflected in the registration that provides protection for all "original audiovisual sequence, editing, staging, and expressive audiovisual arrangement." (*Id.)*. As previously explained, the filtering process does not save the Defendants' arguments because it is improper as the totality of the movements combined with the lighting, specific camera angles, and posing is protectable as a select expression of the author's ideas. As such, Plaintiff owns a valid copyright.

**b. Copying of the Work's Original Constituent Elements**

The Court finds no copying of constituent elements of the work that are original. Copying can be established by "direct evidence of copying" or "access to the copyrighted material and substantial similarity between the [infringer's work] and the copyrighted work." *Warner Bros. Ent., Inc.*, 644 F.3d at 595. Direct evidence of copying "is rarely available because it includes [] witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendant." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006).

The Complaint does not allege direct copying. (Doc. 2). Therefore, the Plaintiff must show copying by "access to the copyrighted material and substantial similarity between the [infringer's work] and the copyrighted work." *Warner Bros.*, 644 F.3d at 595.

**i. Access**

The Court finds that the Defendant lacked "access to the copyrighted material." *Warner Bros.*, 644 F.3d at 595. Access requires more than a "bare possibility," which requires the Plaintiff to prove Defendants had a "reasonable possibility" of viewing the copyrighted work. *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir.1978) (internal marks omitted)). Under the corporate receipt doctrine, "reasonable possibility" of access can be established when the "defendant is a corporation" and "one employee has possession of plaintiff's work" and "another employee (who composed defendant's work) had access" to view the work "by [] physical propinquity between the employees." *Moore*, 972 F.2d at 942; *see also* 3 *Nimmer on Copyright* § 13.02[A].

The Eighth Circuit has relied on "*Meta-Film* as the leading case on the law of access." *Moore*, 972 F.2d at 944. In *Meta-Film*, the Ninth Circuit found "[i]n each of the[] cases [where access had been found reasonably possible], an individual in a position to provide suggestions or comments with respect to the

defendant's work—a supervisory employee or an employee within the unit from which the defendant's work was developed—had the opportunity to view the plaintiff's work." *Id.* (quoting *Meta–Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1357 (C.D. Cal. 1984)).

In *Moore*, the defendant had the copyrighted song in hand; therefore, it was a reasonable possibility that someone within the corporation could view the work and relay comments to those who developed the infringing work. *Moore*, 972 F.2d at 945. Moreover, *Moore* notes that a "key feature of the access argument is the close relationship linking the intermediary and the alleged copier." *Id.* In short, the person viewing the protected work also needed to have some level of input among those who infringed.

Plaintiff attempts to establish access based on contact between WCWA personnel and WWE employees, which placed WCWA's programming in the WWE talent review pipeline. (Doc. 2, pp. 10-11). First, Plaintiff points to the video prepared for an independent professional wrestler who performed in WCWA events and then appeared on the WWE SmackDown program. (*Id.* at 10). According to the Complaint, the footage was requested for review by a WWE scout. (*Id.*). Plaintiff subsequently oversaw the preparation of the video which was given to the wrestler for delivery to the WWE scouting personnel in August 2019. (*Id.*).

In another instance, Plaintiff's Complaint asserts that a WWE employee attended a live WCWA event in March 2019 and remained in contact with the Plaintiff through 2021. (*Id.* at 11). Under the Plaintiff's belief, this individual continued to monitor WCWA content via publicly accessible platforms, such as Facebook and YouTube, during the period when the Tier 1 Sequence was used, which created access to the materials. (*Id.*).

The facts outlined by the Plaintiff do not demonstrate that the defendant had the opportunity to view the Tier 1 Sequence through either the video or the WWE employee who attended the match because the sequence was not used in either. Plaintiff alleges that, by an unconfirmed monitoring pipeline, someone at WWE possibly viewed the Tier 1 Sequence via the publicly available platforms, then relayed this information to those who incorporated it into live events and video games. There are no facts to suggest the online videos gained widespread attention or became "viral" on their public platforms, which would be more indicative of access.

Based on the current facts, the Plaintiff is asking the Court to make an unsupported leap in the access analysis and to infer access "based on conjecture and speculation." *Griner*, 568 F.Supp.3d at 993; *Hoch v. MasterCard Int'l Inc.*, 284 F.Supp.2d 1217, 1220 (D. Minn. 2003). Additionally, *Moore* and the cases therein explain that access under the corporate receipt doctrine requires the

copyrighted material to be in the defendant's possession and the existence of a "close relationship [between] the intermediary and the alleged copier." *Id.* The Court concludes that the Defendants did not have access to the Plaintiff's work simply because it was later posted online and someone at WWE may or may not have viewed it. The case law is clear: "access" and "reasonable possibility" still require the protected material to be in the defendant's possession and more than mere conjecture that the material was viewed. Thus, even under the corporate receipt doctrine, no access has been established.

**ii. Substantial Similarity**

Access may be inferred by courts "when the similarities between the allegedly infringing material and the copyrighted work are "so striking and of such nature as to preclude the possibility of coincidence, accident or independent creation." *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232, 2019 WL 1207011, at *8 (D. Minn. Mar. 14, 2019).

In determining substantial similarity, the Eighth Circuit applies a two-step analysis. *Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1008 (8th Cir. 2010). "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Id.* (quoting *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 120 (8th Cir.1987) (internal marks omitted)). Next, "if there is substantial similarity in ideas, similarity of expression is evaluated

using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.* As previously stated, filtering is not applicable at this step because "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120 (8th Cir. 1987). Instead, this test requires that the works "be substantially similar [] in their general ideas [and] expression." *Id.* Furthermore, "[s]imilarities between two works that are limited to hackneyed elements cannot furnish the basis for finding substantial similarity for purposes of copyright infringement." 17 U.S.C.A. § 101.

The Court finds the Defendants' live events and video game iterations to be substantively different from the Tier 1 Sequence protected under copyright law. Even if the ideas were found to be substantially similar, the Court does not believe that a reasonable person would view the presentation of the Plaintiff's Tier 1 Sequence as similar to the Defendants' live and video productions. For example, the timing, staggered hierarchical placement, camera angles, and cuing depicted in the Plaintiff's videos are unique to the Plaintiff's individual productions.

The Court notes that the Tier 1 Sequence does not appear to be consistent across the Plaintiff's exhibits as alleged in the Complaint. (Doc. 2, pp. 5-10; *see also* Plaintiff's Memorandum in Opposition, Doc. 26, pp. 9-10). Whereas

Defendants' alleged infringing material is consistent in each iteration of the exhibits provided, and the Court finds that a reasonable person, reviewing the materials together, would only see the similarities amongst the Defendants' clips but not the Plaintiff's clips. This is because the Plaintiff has relied on the "selection, coordination, and arrangement" of the unprotectable elements of the Tier 1 Sequence. (Doc. 2, p. 14).

While copyright protection is available for "original selection or arrangement of the material," it is limited only to the particular arrangement; the protection never extends to the [elements] themselves." *InfoDeli, LLC v. Western Robidoux, Inc.*, No. 15-00364, 2017 WL 11517565, at *10 (W.D. Mo. Sept. 18, 2017). As the Plaintiff has repeatedly alleged in his complaint, he "does not claim ownership of any single gesture, pose, or generic wrestling trope." (Doc. 2, p. 7). Instead, he claims the "the specific, original Tier 1 Audiovisual Sequence . . . as a unified expressive whole." (*Id.*).

In the Court's opinion, the clips presented to establish substantial similarity have not met the standards required by the case law. For the foregoing reasons, the Court finds that the Plaintiff has failed to meet the requirements of access and substantial similarity as required for copyright infringement. As such, Plaintiff has failed to state a claim for direct copyright infringement.

**2. Contributory and Vicarious Copyright Infringement**

Contributory infringement occurs by "intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005). Whereas vicarious infringement is present when one profits "from direct infringement while declining to exercise the right to stop or limit it." *Id.* As direct infringement has not been established based on the facts above, the Court finds that the pleadings for contributory and vicarious copyright infringement have also not been met. Therefore, Plaintiff has failed to state a claim for contributory and vicarious copyright infringement.

**3. Trade Dress Infringement and Unfair Competition**

The Eighth Circuit has defined trade dress as "the total image of a product [or] overall impression created, not the individual features." *Nat'l Presto Indus., Inc. v. U.S. Merchants Fin. Group, Inc.*, 121 F.4th 671, 680 (8th Cir. 2024) (quoting *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 507 (8th Cir. 2004)). A "[t]rade dress will be protected from infringement if it is inherently distinctive and nonfunctional. *Nat'l Presto Indus., Inc.*, 121 F.4th at 680; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992).

When a trade dress is unregistered and an action for infringement commences "under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Nat'l Presto Indus., Inc.*, 121 F.4th at 681; *Wal-Mart Stores, Inc. v. Samara Bros.,*

*Inc.*, 529 U.S. 205, 216 (2000). Secondary meaning is present "when in the minds of the public the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Nat'l Presto Indus., Inc.*, 121 F.4th at 681; *Gateway*, 384 F.3d at 508 (quoting Wal-Mart, 529 U.S. at 211) (internal marks omitted)).

Here, trade dress does not apply to Plaintiff's audiovisual Tier 1 Sequence. Case law has clearly explained that trade dress applies to nonfunctional elements, such as product packaging or the overall appearance of a business based on décor and colors. Plaintiff has not pleaded any facts to suggest the Tier 1 Audiovisual Sequence depicts the overall appearance of a business or that it has achieved secondary meaning among the WCWA audience. As such, Plaintiff has failed to state a claim for trade dress and unfair competition.

**4. Common Law Claims of Unfair Competition & Unjust Enrichment**

As Plaintiff has failed to plead sufficient facts to state the above claims, the common law claims for unfair competition and unjust enrichment are not supported by Plaintiff's Complaint.

## IV. AMENDED COMPLAINT & ORAL ARGUMENT

The Court finds that, at this point, an "amendment would [be] impracticable." *See Futo v. U.S. Bancorp.*, 826 F.Supp.3d 1016, 1038 (D. Minn. 2026). The Plaintiff's arguments alleging WWE access do not come close to the

standard required by case law. Further, the case's history "gives [the Court] no reason to think that Plaintiff[] might realistically be able to amend to address the dismissal-prompting problems identified here." *See id.* For example, Plaintiff provided no new facts to support his alleged copyright infringement claim during oral arguments.

The Court has also reviewed the Plaintiff's Proposed Amended Complaint and finds it unpersuasive because it adds no additional details that address the deficiencies in his argument. As such, the Court finds "it [] difficult to hypothesize how [further] amendment[s] might change those aspects of the decision." *See id.* Therefore, the Court's analysis and conclusions are not changed by the facts alleged in Plaintiff's Amended Complaint and "the dismissal will be with prejudice." *See id.*

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 22) is **GRANTED,** and the case is **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 50) is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 10th day of September 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE